UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES NIETO, ET AL.,

    Plaintiffs,

v.

UNITRON, LP,

    Defendant.
                                         /

Case No. 06-11966

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S MOTIONS FOR AUTOMATIC STAY[9] AND TO DISMISS [10]**

Plaintiffs filed a complaint against Defendant Unitron, LP, on April 27, 2006, alleging that, because Unitron LP is an alter ego for Unitron, Inc. (now known as Norino Company but herein referred to as "Unitron Inc."), it is bound by the 1991-1994 CBA negotiated with the UAW and thus violated Section 301 of the LMRA and ERISA when Unitron, Inc. filed for Chapter 7 bankruptcy on March 15, 2006 and ceased providing health and disability benefits owed under the CBA.

This putative class action is brought by:

(1) individual Plaintiffs on behalf of themselves and others who are similarly situated under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and Section 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a), and

(2) Plaintiff International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW) under Section 301 of the LMRA.

In prior proceedings, this Court and the Sixth Circuit Court of Appeals have held that the 1991-1994 collective bargaining agreement (CBA) at issue here provided vested:

(a) disability and health care benefits for disabled employees up to age 65; and

(b) lifetime retiree health care benefits.

See *Int'l Union v. BVR Liquidating, Inc.*, 190 F.3d 768 (6th Cir. 1999); *UAW Local 540 v. Baretz ("Baretz I")*, 159 F. Supp.2d 961 (E.D. Mich. 2001); and *UAW Local 540 v. Baretz ("Baretz II")*, 159 F. Supp.2d 968 (E.D. Mich. 2001).

This matter is before the Court on Defendant Unitron, LP's motions [9, 10] arguing that Plaintiffs' action should either be dismissed or stayed because Chapter 7 bankruptcy proceedings for Unitron, Inc. are pending in the United States Bankruptcy Court for the Northern District of Texas, Case No. 06-31119-hdh-7.

**I.   Facts**

**The 1997 Benefit Termination**

Unitron Inc. owned and operated the Troy, Michigan Beaver Precision Products plant from March 1991 until May 31, 1994. It was then sold to a company later known as BVR Liquidating, Inc. (Compl. ¶ 21.) Before, during and after Unitron Inc.'s ownership of the plant, the employees were represented by the UAW. (*Id.* at ¶ 19.) After the acquiring company closed the plant and cancelled retiree health care benefits in April 1997 and terminated disability-related benefits in June 1997, the UAW and the retirees sued in this Court. (*Id.* at ¶¶ 21-22.)

**This Court Determined that the 1991-1994 UAW Contract Provided Vested Lifetime Benefits**

This Court found that Unitron Inc. employees who retired from and/or became disabled between March 31, 1991 and June 1, 1994, and their dependents, were entitled to lifetime health care benefits under the UAW 1991-1994 collective bargaining agreement ("CBA"). *See Baretz II*, 159 F. Supp.2d at 972 n.4. It also found that these employees were entitled to disability benefits until the age of 65, and ordered Unitron Inc. to compensate covered employees for their "out-of-pocket medical expenses that they incurred as a result of losing their medical and dental benefits." *Baretz I,* 159 F. Supp.2d at 967.

Pursuant to this Court's orders, the vested retiree and disability-related benefits were reinstated and monies were paid to retired and disabled former Unitron Inc. employees. (Compl. ¶ 27.)

**Operations of Unitron Inc. to Unitron LP**

Unitron, Inc. was a Texas corporation, owned by Scott A. Lefky, that manufactured, among other things, power units for aircraft and conducted business at 10925 Miller Road, Dallas, Texas. Its president and registered agent was Ray Beutel. On December 31, 2001, it had assets in excess of $1.3 million. (*Id.* at ¶ 28.)

On January 1, 2002, Lefky, the sole owner of Unitron Inc., formed Unitron LP, a limited partnership, with Lefky as its general partner. (*Id.* at ¶ 29; Ex. 15 to Compl., letter from Texas Comptroller of Public Accounts dated 3/23/06.)

Plaintiffs allege that Unitron LP is a disguised continuance and the alter ego of Unitron Inc. (Compl. ¶ 30.) Unitron LP and Unitron Inc. have substantially identical management,

3

business, purpose, operation, equipment, customers, supervision and ownership. Both maintain their main office at 10925 Miller Road, Dallas, Texas. Both are owned by Lefky. Both have Ray Beutal as "president." Both manufacture power units for aircraft and are the recipients of government contracts. (Compl. ¶ 30; Exs. 13-16 to Compl.) According to Unitron Inc.'s website, Unitron Inc. "is no longer an operating entity. Its business operations and its employees, including all of its management team, are now at Unitron, LP." (Ex. 11 to Compl., www.unitroninc.com.)

**Unitron Inc. Changes Name to Norino Company and Declares Bankruptcy**

On March 14, 2006, Lefky changed Unitron Inc.'s name to Norino Company. (Resp., Ex. A, Certificate of name change.)

On March 15, 2006, Unitron Inc. filed a Chapter 7 "no asset" voluntary bankruptcy petition in the United States Bankruptcy Court for the Northern District of Texas in the name of "Norino Company fka Unitron, Inc." (Compl. ¶ 31, Ex. 16.) In its petition, Unitron Inc. claimed that it had approximately $12,000 in assets and annual liability in excess of $300,000 for the cost of disability and health care benefits. (Ex. 16 to Compl.)

On March 15, 2006, Unitron LP, as the disguised continuance and alter ego of Unitron Inc., unilaterally terminated the vested retiree and disability-related benefits of the former employees of the Unitron plant in Troy, Michigan who retired and/or became disabled from employment between March 31, 1991 and June 1, 1994. (Compl. ¶ 32.)

II. **Motion to Dismiss Standard**

A Rule 12 (b) (6) motion to dismiss tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v.*

*Oliver*, 510 U.S. 266 (1994); *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996).

This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted). A court should not grant a 12(b)(6) motion unless the movant shows "beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The Court's function "is not to weigh the evidence or assess the credibility of witnesses but rather to examine the complaint and determine whether the plaintiff has pleaded a cognizable claim." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2003) (internal citations omitted).

**III.    Analysis**

Defendant Unitron LP asks this Court to dismiss Plaintiffs' lawsuit for numerous reasons. The essence of its arguments are as follows. It is undisputed that Unitron LP was never a party to the CBA that entitled Plaintiffs to disability and/or health benefits. Thus, Unitron LP cannot be held responsible for those benefits unless Plaintiffs are successful in their argument that Unitron LP is an alter ego for Unitron Inc., now known as Norino Company. Unitron LP further argues that, because Norino filed for Chapter 7 bankruptcy, the Bankruptcy Trustee is the only party that can assert alter ego claims against Unitron LP for the benefit of Norino's creditors and the Bankruptcy Court is the only court that may consider such claims. Accordingly, the core questions this Court must decide are (1)

whether the Bankruptcy Trustee or Plaintiffs have the right to assert ERISA and LMRA liability claims under an alter ego theory against Unitron LP, and (2) whether the Bankruptcy Court or this Court has jurisdiction to decide that issue. The Court first considers whether it has jurisdiction to determine who has the right to assert claims of ERISA and LMRA liability under an alter ego theory against Unitron LP.

### A. Subject Matter Jurisdiction

This Court has subject matter jurisdiction over Plaintiffs' federal claims against Unitron LP under 28 U.S.C. § 1331 because Count I is brought under § 301 of the LMRA and Count II is brought under § 502(a)(1)(B) of ERISA. Defendant Unitron LP relies on *Peacock v. Thomas*, 516 U.S. 349 (1996), to argue that federal subject matter jurisdiction is lacking over Plaintiffs' claims. Defendant is mistaken.

As observed by the Sixth Circuit, "claims for *direct* ERISA liability against a corporation's alter ego 'do not implicate *Peacock* concerns'. . . ." *UAW v. Aguirre*, 410 F.3d 297, 301 (6th Cir. 2005) (citing *Ellis v. All Steel Constr., Inc.*, 389 F.3d 1031, 1034 (10th Cir. 2004)). "Veil piercing and alter ego concepts are separate and distinct." *Id.* at 302. Veil piercing asks the court to hold *A* vicariously liable for *B*'s debt. "By contrast, a contention that *A* is *B*'s 'alter ego' asserts that *A* and *B* are *the same entity*; liability then is not vicarious but direct." *Id.* (internal quotes and citations omitted). "In the labor law context, the alter ego doctrine of direct liability typically applies in 'disguised continuance' cases to bind a new employer that continues the operations of an old employer in those cases where the new employer is merely a disguised continuance of the old employer." *Id.* (internal quotations and citation omitted). The Sixth Circuit further observed that the alter ego doctrine "also applies in so-called double-breasted operations to determine whether two

6

or more coexisting employers performing the same work are in fact one business, separated only in form." *Id.* (internal quotations and citation omitted). The same test is applied in both the "disguised continuance" and "double-breasted operation" contexts to determine whether *A* is *B*'s alter ego. *Id.* That test requires the Court to determine "whether the two enterprises have substantially identical management, business, purpose, operation, equipment, customers, supervision and ownership." *Id.* (internal quotations and citation omitted). *Accord Yolton v. El Paso Tennessee Pipeline Co.*, 435 F.3d 571, 588 (6th Cir. 2006).

Here, Plaintiffs are asserting that Unitron LP is Unitron Inc.'s alter ego; that they are the same entity. Unlike the plaintiffs in *Peacock* and *Ellis v. All Steel Construction, Inc.*, 389 F.3d 1031 (10th Cir . 2004), Plaintiffs here bring their alter ego claims directly against Unitron LP as the disguised successor of Unitron Inc. Accordingly, Plaintiffs claims against Unitron LP for ERISA and LMRA liability are direct and thus do not implicate *Peacock* concerns.

Defendant Unitron LP also argues that the forum where Norino Company's bankruptcy proceeding is pending has exclusive jurisdiction over matters concerning the scope of the automatic stay, the allowance or disallowance of claims against the bankruptcy estate and other proceedings concerning property of the estate. (Def.'s Br. at 1.) Again, Defendant is mistaken. It "confuses jurisdiction to grant relief from the stay under 11 U.S.C. § 362(d) with jurisdiction to determine whether the stay applies in the first instance. That the bankruptcy court may be the exclusive forum to consider a motion for relief from the automatic stay, . . . does not preclude a nonbankruptcy court from determining whether a matter pending before it is stayed by a party's bankruptcy filing."

7

*Singleton v. Fifth Third Bank (In re Singleton)*, 230 B.R. 533, 539 (B.A.P. 6th Cir. 1999). *Accord NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 938-39 (6th Cir. 1986).

Although Unitron LP does not admit that it is the alter ego of Unitron Inc., it argues that it should nonetheless be protected by the automatic stay that arises from Unitron Inc.'s bankruptcy filing. Section 362 of the Bankruptcy Code, 11 U.S.C. § 362(a), does not serve to protect third parties who are not debtors in a bankruptcy proceeding or assets that are not the property of a bankruptcy estate. Here, it is not argued that Unitron LP is a debtor in a bankruptcy proceeding. Rather, the core disputed issue is whether Plaintiffs' ERISA and LMRA claims against Unitron LP under an alter ego theory are property of the bankruptcy estate that can be asserted solely by the Bankruptcy Trustee. The Court now addresses this core issue.

### B.  Property of the Bankruptcy Estate

Defendant Unitron LP and Plaintiffs both rely on *Spartan Tube & Steel, Inc. v. Himmelspach (In re RCS Engineered Products Co., Inc.)*, 102 F.3d 223, 225-26 (6th Cir. 1996), to advance their opposing arguments as to whether the Bankruptcy Trustee or Plaintiffs have standing to assert claims under an alter ego theory. The parties do not dispute the basic principle that, "[p]roperty of the estate does not belong to any individual creditor." *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993). Rather, they dispute whether Plaintiffs' alter-ego claims are property of Unitron Inc.'s bankruptcy estate and thus can be asserted only by the Bankruptcy Trustee. They also dispute what law the Court applies to resolve this core issue.

Contrary to Plaintiffs' arguments here, the Court must look to state law, not federal common law, to determine whether such claims constitute property of the bankruptcy

estate. "Whether a particular cause of action is available to the debtor, and thus constitutes 'property of the estate,' is determined by state law." *In re RCS Engineered Products Co., Inc.*, 102 F.3d at 225 (citing *Butner v. United States*, 440 U.S. 48 (1979)).[1]  "If under governing state law the debtor could have asserted an alter ego claim to pierce its own corporate veil, that claim constitutes property of the bankrupt estate and can only be asserted by the trustee or the debtor-in-possession." *Kalb, Voorhis & Co.*, 8 F.3d at 132. *Accord*, *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 169 n.5, 170-72 (3d Cir. 2002) (applying New Jersey law in ERISA action to determine whether bankruptcy trustee or injured creditor has standing to assert claim based on alter ego theory). This does not end the parties' dispute. They also disagree on what state's law should apply to decide this core issue.

Defendant Unitron LP argues that this Court must look to Texas law because Unitron Inc. was incorporated there and Unitron LP's headquarters, sole plant, and most of its assets are located in Texas. Under Texas law, an alter ego claim is considered property of the bankruptcy estate; and, as such, only the Bankruptcy Trustee has standing to assert

---

[1] Plaintiffs' reliance on *Yolton*, 435 F.3d 571 (6th Cir. 2006); *National Labor Relations Board v. Fullerton Transfer & Storage Limited, Inc.*, 910 F.2d 331 (6th Cir. 1990); and *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702 (6th Cir. 1988), is misplaced. These decisions do not address whether a court must apply state law or federal common law when deciding whether an alter-ego claim is property of a bankruptcy estate or whether a bankruptcy trustee or creditor has standing to assert such a claim. The authority the Court relies on, however, does directly address these issues and concludes that state law governs this bankruptcy-related issue.

This does not mean that the Court will apply state rather than federal law when determining Plaintiffs' ERISA and § 301 claims under the LMRA. It will not. *See Yolton*, 435 F.3d at 586.

9

them. *See Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d at 133 (applying Texas law); *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142 (5th Cir. 1987) (applying Texas law). Plaintiffs argue that Michigan law governs because Plaintiffs are from Michigan, benefits will be paid from a Michigan insurer, and thus Michigan has the greatest interest in and connection to the claims asserted in Plaintiffs complaint. Under Michigan law, an alter ego claim is not considered property of the bankruptcy estate. *In re RCS Engineered Products Co.*, 102 F.3d at 226-227. Michigan law observes the basic principle of corporate law that "the corporate veil is pierced only for the benefit of third parties, and never for the benefit of the corporation or its stockholders", *id.* at 226; that "[t]here is simply nothing in the cases to suggest that Michigan courts would allow an alter ego claim to be brought in other than third-party situations", *id.* at 227; and thus, an alter ego claim "does not become the property of the estate under § 541(a)(1) of the Bankruptcy Code" and the Bankruptcy Trustee "may not bring an alter ego claim under § 704(1) of the Code" and thus the automatic stay provision of the Code does not operate as a bar to lawsuits alleging such claims.

The Sixth Circuit was not faced with a choice-of-law issue in *In re RCS Engineered Products Co.* The issue did arise in *Kalb, Voorhis & Co.*[2] Under facts similar to those

---

[2] In that case, Circle K Corporation, a Texas corporation, filed a voluntary petition for bankruptcy under Chapter 11. While that bankruptcy action was pending, Kalb, Voorhis & Co., holder of debentures issued by the debtor, Circle K Corporation, sued American Financial Corporation (AFC), seeking to impose liability on AFC for Circle's default on the debentures under a theory that AFC was Circle K's alter ego. The lawsuit was filed in the United States District Court for the Southern District of New York. *Kalb, Voorhis & Co.*, 8 F.3d at 131. On AFC's motion, the district court applied the choice of law principles of the forum state (New York), determined that under those choice of law principles Texas law would be applied, and thus determined that the alter ego claim constitutes property of the bankruptcy estate, that the bankruptcy trustee rather than individual creditors had standing

10

presented here, the Second Circuit Court of Appeals observed that "[t]he state law to be applied is determined by the choice of law principles of the forum state." *Kalb, Voorhis & Co.*, 8 F.3d at 132.

Plaintiffs point the Court to Michigan's choice of law rule for contract disputes. *See Mill's Pride, Inc. v. Continental Ins. Co.*, 300 F.3d 701, 704 (6th Cir. 2002). This is not a contract dispute. The analysis of the choice-of-law issue in *Chrysler Corporation v. Ford Motor Company*, 972 F. Supp. 1097, 1101-1104 (E.D. Mich. 1997), is more on point.

In that case, the Court addressed a claim that one corporation was the alter ego of another and thus should be responsible under federal and state environmental laws for response costs. Before it could address the substantive alter ego argument, the Court observed that "CERCLA does not limit or define successor in interest liability" and the Sixth Circuit has held that the issue is governed by "state corporation law principles rather than federal common law." *Id.* at 1101. It then addressed the question faced here: which state's law shall govern; the law of the state of incorporation of the alleged successor corporation or the law of the state with the greatest interest in and connection to the claims asserted in the lawsuit? *Id.* Analyzing this choice-of-law issue, the *Chrysler* Court held that, when the rights of third parties external to the corporation are at issue, [t]he state directly affected by the alleged corporate wrongdoing must be allowed to determine the extent to which the corporate veil may be pierced." *Id.* at 1103. Stated otherwise, the law that governs the alter ego issue will be that of the state with the "most significant relationship" to the lawsuit. *Id.*

---

to bring alter ego claims and thus dismissed the lawsuit. *Id.* This decision was affirmed on appeal.

Applying that choice-of-law rule here, Michigan is the state with the most significant relationship to the lawsuit. Plaintiffs' claims for lifetime health benefits arise out of their employment at a Michigan plant, pursuant to a CBA negotiated in Michigan, with a union headquartered in Michigan. All of the Plaintiffs are Michigan residents, as is their health insurance provider. Accordingly, Michigan law governs whether Plaintiffs' ERISA and LMRA claims, alleged under an an alter ego theory, are property of the bankruptcy estate. They are not. *See In re RCS Engineered Products Co.*, 102 F.3d at 227.

Because Plaintiffs' alter ego claims are not property of the estate under § 541(a)(1) of the Bankruptcy Code, the Bankruptcy Trustee does not have standing to bring an alter ego claim under § 704(1) of the Code,[3] and the automatic stay provision of the Code does not operate as a bar to lawsuits alleging such claims. *Id.*

## IV. Conclusion

For the above-stated reasons, Defendant's motion to dismiss [10] and its suggestion of automatic stay [9] are hereby DENIED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: August 7, 2006

---

[3] For these same reasons, the Bankruptcy Trustee is not a necessary party to this action. Defendant's arguments to the contrary are rejected.

This Court also rejects Defendant's argument that benefits owed to Unitron Inc.'s former employees under the expired 1991-1994 CBA can be rejected by the Bankruptcy Trustee as an executory contract.

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 7, 2006, by electronic and/or ordinary mail.

    s/Carol A. Hemeyer
    Case Manager